IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TOSHIBA CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 03-1035-SLR |
| | ) |
| JUNIPER NETWORKS, INC., | ) |
| | ) |
| Defendant. | ) |

Richard L. Horwitz, Esquire and David E. Moore, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Arthur I. Neustadt, Esquire, Richard D. Kelly, Esquire, James J. Kulbaski, Esquire, Thomas J. Fisher, Esquire and Scott A. McKeown, Esquire of Oblon, Spivak, McClelland, Maier & Neustadt, P.C., Alexandria, Virginia.

William J. Marsden, Jr., Esquire and Sean P. Hayes, Esquire of Fish & Richardson P.C., Wilmington, Delaware. Counsel for Defendant. Of Counsel: Ruffin B. Cordell, Esquire, Michael J. McKeon, Esquire, Joseph V. Colaianni, Jr., Esquire, Brian T. Racilla, Esquire, and Ralph A. Phillips, Esquire of Fish & Richardson P.C., Washington, District of Columbia.

**MEMORANDUM OPINION**

Dated: June 28, 2006
Wilmington, Delaware

ROBINSON, Chief Judge

## I. INTRODUCTION

Plaintiff Toshiba Corporation ("Toshiba") filed this action against defendant Juniper Networks ("Juniper") alleging infringement of U.S. Patent Nos. 6,147,989 ("the '989 patent"), 6,304,577 ("the '577 patent"), 6,341,127 ("the '127 patent"), and 6,343,322 ("the '322 patent"). (D.I. 1) Toshiba subsequently amended its complaint to also allege infringement of U.S. Patent Nos. 5,835,710 ("the '710 patent") and 6,598,080 ("the '080 patent"). (D.I. 36) Thereafter, Toshiba indicated to Juniper that it is no longer pursuing its infringement allegations with respect to the '989 and '577 patents. (D.I. 158, ex. 1)

Pending before the court is Juniper's motion for partial summary judgment of invalidity of the '322 and '127 patents. (D.I. 153) On April 3, 2006, the court heard oral arguments on this motion. The court has jurisdiction over these matters pursuant to 28 U.S.C. § 1338.

## II. BACKGROUND

A data network is a collection of nodes and connections used to transmit data in the form of digital information. The technology of the patents at issue generally relates to data networks with a focus on signaling between network nodes in order to establish paths through which data travels and the techniques for transmitting data along an established path.

The accused products are network routers for use with data

networks that are designed and sold by Juniper and fall into four product categories: M-series, T-series, J-series, and E-series families of routing products.

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pa. Coal Ass'n v. Babbitt, 63

2

F.3d 231, 236 (3d Cir. 1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

A patent is presumed valid and the burden of proving invalidity, whether under § 112 or otherwise, rests with the challenger. See 35 U.S.C. § 282. In order to overcome this presumption, the party challenging validity bears the burden of proving by clear and convincing evidence that the invention fails to meet the requirements of patentability. See Hewlett-Packard Co. v. Bausch & Lomb, 909 F.2d 1464, 1467 (Fed. Cir. 1990). Clear and convincing evidence is evidence that "could place in the ultimate factfinder an abiding conviction that the truth of [the] factual contentions are 'highly probable.'" Colorado v. New Mexico, 467 U.S. 310, 316 (1984).

A patent specification shall conclude with one or more claims that "particularly [point] out and distinctly [claim]

3

subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2 (2003). The Federal Circuit has explained that a claim satisfies section 112, paragraph 2 if one skilled in the art would understand the bounds of the claim when read in light of the specification. See Miles Labs., Inc. v. Shandon, Inc., 997 F.2d 870, 875 (Fed. Cir. 1993). In determining whether this standard is met, the Federal Circuit has advised that a claim is not indefinite merely because it poses a difficult issue of claim construction. Exxon Research & Eng'g Co. v. United States, 265 F.3d 1371, 1376 (Fed. Cir. 2001). Rather, the Federal Circuit has held a claim sufficiently clear to avoid invalidity on indefiniteness grounds "[i]f the meaning of the claim is discernible, even though the task may be formidable and the conclusion may be one over which reasonable persons will disagree." Id. "A determination of claim indefiniteness is a legal conclusion that is drawn from the Court's performance of its duty as the construer of patent claims." Personalized Media Communications, LLC v. Int'l Trade Comm'n, 161 F.3d 696, 705 (Fed. Cir. 1998). The Federal Circuit noted that "[b]y finding claims indefinite only if reasonable efforts at claim construction prove futile, [the court] accord[s] respect to the statutory presumption of patent validity, . . . and [the court] protect[s] the inventive contribution of patentees, even when the drafting of their patents has been less than ideal." Id.

4

In support of its motion for partial summary judgment of invalidity of the '322 and '127 patents, Juniper argues that claims 2, 4, 5, 7, 8, 11-14, and 17 of the '322 patent and claim 15 of the '127 patent are invalid pursuant to 35 U.S.C. § 112, ¶ 2. (D.I. 154)  In particular, Juniper suggests that the cited claims are "apparatus claims that improperly include method-of-use limitations" and, therefore, are invalid according to the Federal Circuit's ruling in IPXL Holdings, L.L.C. v. Amazon.com, Inc., 430 F.3d 1377, 1384 (Fed Cir. 2005).  (D.I. 154 at 1)

The principle that a claim that recites both a system and the method for using that system is invalid under § 112 ¶ 2 was first explained by the Board of Patent Appeals and Interferences in its decision Ex parte Lyell, 17 U.S.P.Q.2d 1548 (Bd.Pat.App. & Interf. 1990).  In that case, the Board noted that there are "mutually exclusive statutory classes of invention," id. at 1552:

> Patents are authorized by statute and Congress
> has indicated that inventions may be patentable only
> if they fall within **one** of the statutory classes of
> subject matter specified in 35 U.S.C. 101, e.g.,
> "process, machine, manufacture or composition of
> matter". . . .  Historically, these categories of
> invention have been regarded as "four great and distinct
> classes of invention." . . .

Id. at 1551 (citations omitted).  The Board explained the difference between, e.g., a method claim and an apparatus claim:

> A method or process . . . is an act or a series of
> acts and from the standpoint of patentability must
> distinguish over the prior art in terms of steps,
> whereas a claim drawn to apparatus must distinguish
> in terms of structure.

5

Id. at 1552. The Board determined that the pertinent claim language at issue covered both a product and a process:

> An automatic transmission **tool** in the form of a workstand **and method for using same** comprising:
>
> a support means . . .,
>
> and further **comprising the steps of** . . . .

Id. at 1549 (emphasis added). The Board concluded that

> combining two separate statutory classes of invention in a single claim . . . would raise serious questions for a manufacturer or seller of a tool like that claimed by appellant regarding infringement. Such a manufacturer or seller would have no indication at the time of making or selling a workstand of the structure set forth in appellant's claim . . . whether they might later be sued for contributory infringement because a buyer/user of the workstand later performs the appellant's claimed method of using the workstand. We therefore find that appellant's claim . . . is not sufficiently precise to provide competitors with an accurate determination of the "metes and bounds" of protection involved so that an evaluation of the possibility of infringement may be ascertained with a reasonable degree of certainty. . . . Accordingly, for this reason alone we would sustain the examiner's rejection of appellant's independent claim . . . under 35 U.S.C. 112, second paragraph.

Id. at 1550-51.

In a case of first impression, the Federal Circuit addressed the issue of combination claims in IPXL Holdings. The claim language at issue in that case included the following:

> The **system of claim 2** [including an input means] wherein the predicted transaction information comprises both a transaction type and transaction parameters associated with that transaction type, and **the user uses the input means** to either change the predicted transaction information or accept the

6

> displayed transaction type and transaction parameters.

430 F.3d at 1384. The Federal Circuit concluded that it was

> unclear whether infringement of [the above recited claim] occurs when one creates a system that allows the user to change the predicted transaction information or accept the displayed transaction, or whether infringement occurs when the user actually uses the input means to change transaction information or uses the input means to accept a displayed transaction. Because [the above recited claim] recites both a system and the method for using that system, it does not apprise a person of ordinary skill in the art of its scope, and it is invalid under section 112, paragraph 2.

<u>Id.</u>

### 1. The '322 Patent

In the case at bar, Juniper first focuses on the '322 patent and notes that "[c]laim 1 is the only independent apparatus claim presently asserted by Toshiba in the '322 patent."[1] (D.I. 154 at

---

[1]Claim 1 reads as follows:

1. A network interconnection **apparatus** for transferring packets at a boundary of a plurality of networks, the apparatus comprising:

a control message processing **unit configured to communicate with** a previous hop node in one of the plurality of networks by a first control message including a first identification information for identifying an upstream path from the previous hop node to the network interconnection apparatus and a specification information for specifying a group of packets to be transferred on the upstream path, and configured to communicate with a next hop node in another of the plurality of networks by a second control message including a second identification information for identifying a downstream path from the network interconnection apparatus to the next hop node and a specification information for specifying a group of packets to be transferred on the downstream path;

7

3) Each of claims 2, 4, 5, 7, 8, 11-14, and 17 of the '322 patent[2] depends from claim 1. Each of these claims, therefore,

---

a memory **unit configured to store** a first identifier at a layer lower than layer 3 of the upstream path and a second identifier at a layer lower than layer 3 of the downstream path corresponding to the upstream path, according to the first and second control messages used by the control message processing unit; and

a transfer **unit configured to transfer** a packet from the upstream path to the corresponding downstream path, referring to the memory unit.

'322 patent, col. 44, ll. 23-49.

[2]Claims 2, 4, 5, 7, 8, 11-14, and 17 read as follows:

2. The **apparatus** according to claim 1, further comprising:

another memory unit configured to store a destination information including a layer 3 address regarding a destination and a corresponding next hop information,

wherein the control message processing **unit communicates with** the next hop node according to the destination information and the corresponding next hop information stored in said another memory unit.

4. The apparatus according to claim 2, further comprising a transfer processing unit configured to transfer a packet to the next hop node, referring to said another memory unit according to a layer 3 address regarding a destination of the packet.

5. The apparatus according to claim 4, further comprising a receiving unit configured to receive a packet through a virtual connection, and to transfer the packet to the transfer unit when said memory unit stores an identifier of the virtual connection as the first identifier that corresponds to the second identifier and otherwise transfer the packet to the transfer processing unit.

8

7. The apparatus according to claim 1, wherein the transfer **unit uses** a first virtual connection as the upstream path and a second virtual connection as the downstream path.

8. The apparatus according to claim 7, wherein the memory **unit stores** an identifier of the first virtual connection as the first identifier and an identifier of the second virtual connection as the second identifier.

11. The apparatus according to claim 1, wherein the control message processing **unit uses** at least one of addresses regarding a source or a destination of the group of packets to be transferred as the specification information.

12. The apparatus according to claim 1, wherein the transfer **unit transfers** another packet from the upstream path to the corresponding downstream path, said packet being toward one destination and said another packet being toward another destination, both said packet and said another packet belonging to the group of packets.

13. The apparatus according to claim 1, wherein the control message processing **unit uses** the first identifier to be stored in the memory unit as the first identification information, and uses the second identifier to be stored in the memory unit as the second identification information.

14. The apparatus according to claim 1, wherein the control message processing **unit starts to communicate with** one of the next hop node and the previous hop node when the other of the next hop node and the previous hop node starts to communicate with the network interconnection apparatus.

17. The apparatus according to claim 1, wherein the control message processing **unit communicates with** another previous hop node by a third control message including a third identification information for identifying another upstream path from said another previous hop node to the network interconnection apparatus and a specification information for specifying a group of packets to be transferred on said

9

is an apparatus claim which contains the limitations present in claim 1. The issue of disagreement between the parties is whether each of these dependent claims also contains one or more limitations directed to methods of using the claimed apparatus, or whether any such additional limitations merely describe the function of the apparatus.

In evaluating the claims of the '322 patent at issue, the court finds that each of these claims is an apparatus claim which does not include limitations which are directed to a method of using the claimed apparatus. No clear and convincing evidence is present to suggest otherwise. For example, claim 1 of the '322 patent states that a "network interconnection apparatus" includes, inter alia, a "control message processing unit," a "memory unit," and a "transfer unit." '322 patent, col. 44, ll. 23-49. Claim 2 depends from claim 1 and requires that the "control message processing unit" described in claim 1 "communicates with the next hop node." '322 patent, col. 44, ll. 51-58. This latter language is equivalent to "is configured to communicate with the next hop node", but uses more active

---

> another upstream path, and the memory **unit stores** a third identifier at a layer lower than layer 3 of said another upstream path, such that the first and third identifiers are stored in correspondence with the second identifier.

'322 patent, col. 44, l. 50 - col. 46, l. 11 (emphasis added).

language in describing the unit. Thus, claim 2 includes a functional limitation within an apparatus claim, which does not in itself render the claim invalid under 35 U.S.C. § 112, ¶ 2. Claim 4 depends from claim 2. Claim 5 depends from claim 4. Both claims 4 and 5 use functional language to describe the apparatus which is the subject of the claims. Therefore, claims 2, 4 and 5 are not rendered invalid for indefiniteness under the reasoning of IPXL Holdings.

For the same reason, the rest of the claims of the '322 patent which are at issue also are not rendered indefinite. Each such claim uses active functional language instead of passive language to describe the functions of the underlying apparatus. Claims 7, 11 and 13 of the '322 patent each requires that a part of the claimed "network interconnection apparatus" which is described in claim 1 "uses" certain data or paths in its operation. '322 patent, col. 45, ll. 15-18, 35-38, 45-49. Claims 8 and 17 each require that the "memory unit" of the "network interconnection apparatus" described in claim 1 "stores" a specific type of identifier in operation. '322 patent, col. 45, ll. 19-22; col. 46, ll. 1-11. Similarly, claim 12 requires that the "transfer unit" within the "network interconnection apparatus" described in claim 1 "transfers" packets in a particular fashion during operation. '322, col. 45, ll. 39-44. Finally, each of claims 14 and 17 of the '322 patent requires

that the "control message processing unit" within the "network interconnection apparatus" described in claim 1 "communicate[s] with" particular nodes during operation. '322 patent, col. 45, ll. 50-55; col. 46, ll. 1-11. None of the claims at issue impermissibly inserts method-of-use language into an apparatus claim. Thus, Juniper's motion for partial summary judgment of invalidity shall be denied with respect to the '322 patent.

### 2. The '127 Patent

Claim 14[3] of the '127 patent is an apparatus claim

---

[3]Claim 14 states:

14. A router **device**, comprising:

a switch **unit for carrying** out a label switching with respect to entered packets according to a correspondence between an input side label for identifying a channel from which a packet stream is to be entered and an output side label for identifying a channel from which the packet stream is to be outputted;

a memory **unit for storing** a policy information indicating a permitted neighboring node/network from which a packet transfer by the label switching is to be permitted;

a receiving **unit for receiving** a request message for requesting a set up of a requested label switching path through the router device, the request message containing a message source information indicating a source of the request message and a stream information indicating a desired packet stream to be transferred through the requested label switching path; and

a control **unit for judging** whether or not to permit the set up of the requested label switching path by comparing the message source information contained in the request message as received by the receiving unit

describing a "router device." '127 patent, col. 30, ll. 1-29. Claim 15[4] of the '127 patent depends from claim 14 and is not rendered indefinite under the rationale of IPXL Holdings. Claim 15 is an apparatus claim which incorporates limitations which are directed to the function of, and not the method of using, the claimed apparatus. Claim 15 requires that the "control unit" of the claimed router device "checks authentication" of messages and "judges the set up" of a requested label switching path, thereby using active language to describe the capabilities of the claimed apparatus where passive "configured to" language could be substituted. Based on the arguments of the parties with respect to Juniper's motion, no clear and convincing evidence is present to render Claim 15 indefinite and invalid under 35 U.S.C. § 112,

---

> with the policy information as stored in the memory unit, and setting up the requested label switching path through the router device for the desired packet stream indicated by the stream information contained in the request message as received by the receiving unit when the set up of the requested label switching path is judged as permitted.

'127 patent, col. 30, ll. 1-29 (emphasis added).

[4]Claim 15 reads:

> 15. The router **device** of claim 14, wherein the control **unit** also **checks** authentication of the request message, and **judges** the set up of the requested label switching path as permitted when the request message is authenticated as a message truly transmitted from the permitted neighboring node/network.

'127 patent, col. 30, ll. 30-35 (emphasis added).

13

¶ 2. Therefore, Juniper's motion for partial summary judgment of invalidity shall be denied with respect to the '127 patent.

## V. CONCLUSION

For the reasons stated, Juniper's motion for partial summary judgment of invalidity of the '322 and '127 patents (D.I. 153) shall be denied.